## ANTHIS v. SULLIVAN OIL & GAS CO. et al.

No. 11476—Opinion Filed Sept. 13, 1921.

(Syllabus.)

**1. Contracts—Construction—Language of Contract.**

The object to be attained in construing contracts is to ascertain the meaning and intent of the parties as expressed in the language used.

**2. Oil and Gas—Lease—Construction.**

The phrase, "It is agreed that this lease shall remain in full force for the term of one year from this date and as long thereafter as oil or gas or either of them is produced therefrom," is not ambiguous or susceptible of more than one construction.

### 3. Same—Termination of Lease—Quieting Title.

In an action to quiet title for the reason the lease terminated by its own terms, where the lease provided it should remain in full force for one year and as long thereafter as oil or gas or either of them was produced therefrom, and more than one year thereafter the evidence is uncontradicted that the lessee plugged the only well on said premises that had produced oil or gas and there was no other well upon said premises from which oil or gas might be produced, held the lease terminated by its own terms and it was error to refuse to quiet plaintiff's title.

### 4. Contracts—Construction — Language of Contract.

The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the others; the judicial function of the court of law is to enforce a contract as it is written.

### 5. Oil and Gas—Termination of Lease—Quieting Title.

From an examination of the record, held, the lease in the instant case, according to the uncontradicted testimony, had terminated by its own terms and it was error for the trial court to refuse to quiet the title in the plaintiff and against the defendant.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Austin E. Anthis against the Sullivan Oil & Gas Company and another to cancel an oil and gas lease. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

W. W. Noffsinger and A. L. Harris, for plaintiff in error.

Charles O'Connor and Allen K. Swann, for defendants in error.

McNEILL, J. This action was commenced in the district court of Creek county by Austin Anthis against The Sullivan Oil & Gas Company and The Whitehead Oil & Gas Company to cancel a certain oil and gas lease on the lands owned by plaintiff. The original petition prayed for cancellation of the oil and gas lease for the reason the defendants had breached the terms of the lease, in that the oil lease provided the lessees should deliver to the lessor one-eighth of the oil produced and saved from the premises and the lessees had violated the terms of said lease by converting all the oil to their own use and failed to pay or deliver the royalty to plaintiff. There-

after a supplemental petition was filed, asking that the title be quieted in plaintiff for the reason the lease terminated by its own terms. The lease contained the following provisions:

"It is agreed that this lease shall remain in force for the term of one year from this date (10th day of January, 1917) and as long thereafter as oil or gas or either of them is produced therefrom by the party of the second part, his successors or assigns."

The petition alleged that no oil or gas had been produced from said premises since about the 1st of December, 1918, and the property was no longer producing oil or gas, and that the only well on said premises that ever had produced oil or gas had been plugged and abandoned, and the lease by its own terms terminated.

To this petition the defendants answered denying that oil and gas were not being produced from said premises. Denied that the well had been plugged, and alleged that they were further developing the premises and at that time were drilling a well on the premises and had drilled the same to a depth of 500 feet, and further alleged that if the well had been plugged it was only plugged by reason of the same caving, and alleged they had spent large sums of money in the development of the premises.

The parties settled and compromised the controversy relating to the amount of oil royalty due for oil that had been sold by the defendants upon the defendants paying to the plaintiff the sum of $500, leaving but one issue to be tried to the court, to wit, whether the lease terminated by its terms by reason of the failure of the defendants to produce oil from the premises. The court made certain findings of fact and conclusions of law, but it is only necessary to notice the fourth and fifth findings, which are as follows:

"It is agreed that this lease shall remain in full force for a term of one year from this date and as long thereafter as oil or gas, or either of them is produced therefrom. And that said lease is ambiguous and contains no provision for its termination applicable to the facts in this case, after the expiration of one year."

The fifth finding is as follows:

"That oil was produced for a period of one year and up to December, 1918, from said lease, and the last payment received for royalty oil by the lessor was January 20, 1919."

The court, after making said findings, rendered judgment in favor of the defendants and against the plaintiff. From said judgment the plaintiff appealed, and for reversal contends the court erred in holding said lease ambiguous, and that after the court found that oil was produced only up to December, 1918, then as a matter of law, under and by virtue of the terms of the lease, the same terminated.

The uncontradicted evidence disclosed that no oil was produced from the premises at the time of filing the supplemental petition, nor was it being produced at the time of the trial, nor were there any wells on the premises at the time of filing the supplemental petition or at the time of the trial from which oil could be produced. The record disclosed that, at the time of executing the lease in question, a well had been drilled upon the lands of the plaintiff, but that oil had never been produced therefrom in paying quantities. After obtaining the lease, the defendants cleaned out the old well and produced oil therefrom until December, 1918. No oil was produced thereafter except in May or June, 1919, when the lessees swabbed the well and produced a couple of hundred barrels of oil and the same was run into the oil tanks on the farm. The lessees continued to work upon said well from time to time until about the first of December, 1919, then plugged and abandoned the well. During these two years no new wells were drilled on the premises, although in April, 1919, a well was started and drilled to a depth of about 1200 feet, when the contractor abandoned the same.

At the date of filing the supplemental petition there was no oil being produced from the premises, nor any well from which oil could be produced. The only well that ever produced oil had been plugged and abandoned. On the 29th day of December, 1919, when defendants filed their answer, or 14 days after the filing of the supplemental petition, they alleged they were drilling and had drilled to a depth of about 500 feet.

It is contended that the fourth finding of the court is erroneous. We are unable to agree with the trial court that the phrase: "It is agreed that this lease shall remain in force for the term of one year from this date, and as long thereafter as oil or gas, or either of them is produced therefrom by the party of the second part, its successors or assigns"—is ambiguous. The language used is plain and unambiguous. The parties, in language which cannot be misconstrued, provided that the lease should remain in full force for one year, and as long thereafter as oil or gas or either of them, was produced therefrom. A contract is ambiguous when it is susceptible of more than one meaning. If the phrase, "as long thereafter as oil or gas or either of them, is produced therefrom, is ambiguous, it must be susceptible of more than one meaning. If it is susceptible of any construction except exactly what it says, we are not informed as to what it is. We know of no construction that can be placed upon the phrase except that when the parties failed to produce oil and gas from said lands after one year of the lease terminated. There might be some question arise as to whether the lessee was producing oil or gas within the meaning or terms of the lease, but there can be no controversy on this question when there is no well on the premises from which oil or gas can be produced. The law presumes that parties understood the import of their contracts, and they intended that which its terms manifest, as stated in 6 R. C. L. 835, as follows:

"The law presumes that the parties understood the import of their contract, and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties, and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what is meant by the language of the instrument."

Again, in the same paragraph, the following language is used:

"The object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used."

The above law has been followed and announced by the court in many cases, among which are: Bearman v. Dux Oil & Gas Co., 64 Okla. 147, 166 Pac. 199; Wolf v. Blackwell Oil & Gas Co., 77 Okla. 81, 186 Pac. 484; Withington v. Gypsy Oil Co., 68 Oklahoma, 172 Pac. 634.

The parties to this lease agreed in plain terms that this lease should extend for one year and as much longer as oil or gas was produced therefrom. The year

had expired, and it is admitted that the only well from which oil or gas was ever produced had been plugged and abandoned and the casing pulled, and it is admitted there is no other well on the premises from which oil or gas could be produced; then according to their agreement, this lease terminated. An oil and gas lease is a contract which the parties have a right to enter into, and there is no reason, when the terms are plain and unambiguous, that they should not be enforced.

It is a well-known rule of law:

"The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the others; the judicial function of a court of law is to enforce a contract as it is written." Kupersmith v. Delaware Ins. Co. (N. J.) 86 Atl. 399.

The defendants in error rely upon the case of Strange v. Hicks, 78 Okla. 1, 188 Pac. 347, but this case can be easily distinguished from the facts in that case. In that case a well had been drilled upon the premises and gas found in paying quantities, and while the gas was not being produced, it was because the parties were unable to connect with pipe line. While the writer of this opinion dissented in that case, still the cases are easily distinguished, because in that case a well was upon the premises from which gas could be produced, but in the instant case it is admitted there is no well upon the premises from which oil or gas can be produced. The case of Prowant v. Sealey. 77 Okla. 244, 187 Pac. 235, is also cited and relied upon, but in that case the lease was for three years and as much longer as oil or gas was found thereon, or said premises developed or operated. The question before the court was whether the words "developed or operated" gave the lessee the right to develop the premises after the three-year period, but the lease in the instant case contained no such provision.

It is further contended that a court of equity will not forfeit the lease under the facts existing in the case at bar. This court, in the case of Curtis v. Harris, 76 Okla. 226, 184 Pac. 574, stated in substance: It is not a question of forfeiture, but whether the lease terminated by its own terms. If the lease terminates by its own terms, there is nothing to forfeit.

The case is reversed and remanded with instructions to the district court to set aside the judgment and to render judgment in favor of the plaintiff and against the defendants quieting the title as to said oil and gas lease, and, if necessary, to take such further proceedings regarding an accounting, if any is necessary by reason of change of conditions, not inconsistent with the views herein expressed.

HARRISON, C. J., and PITCHFORD, JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur.