## REES et al. v. ADAMS et al.

No. 18931. Opinion Filed Dec. 17, 1929.

R. P. White and A. E. White, for plaintiffs in error.

Warner, Hardin & Warner, for defendants in error.

BENNETT, C. Defendants in error, as plaintiffs, brought suit against plaintiffs in error, as defendants, to cancel a certain coal mining lease and to quiet title to a farm of 160 acres in LeFlore county, Okla. The parties will be referred to as they appeared in the trial court. Upon a trial to the court there was a judgment for plaintiffs, from which defendants appeal.

It appears that December 18, 1922, Sam McKinney, Harry Wallis and J. N. Adams, the then owners of said land, executed thereon a coal mining lease upon a royalty basis to J. D. Bennight. There was already opened up and in working condition a coal mine on the land. The lessee was to have the use of the mining tools and equipment of the owners then on the lease. Said lease provided that the existing mine and such others as should be opened should be operated continuously, except when prevented by strikes, lockouts or other causes beyond lessee's control, and that the work should be prosecuted in a workmanlike manner, that the tools. machinery and equipment of lessors should be cared for and returned in good condition, subject only to ordinary wear and tear, that the mine should be protected from water, should be so operated as to prevent caving or squeezing, and that the lease should not be transferred except with the consent of owners and that any failure to comply with all the terms of said contract should forfeit the same and owners might take over property without process of law.

The petition alleged that lessee wholly failed to comply with provisions of the lease and had forfeited his rights in the premises; that Guy Rees, Paul Rees, M. L. Pitcock, Will Eideschum, Leo Eideschum, Charles Banks and W. K. Carter are making some claim of right, title or interest in said lands as lessees, but that the same is without foundation; that such lease now outstanding and assertions of claim thereunder by defendants constitute clouds upon the title of plaintiffs to said land.

It was further alleged that defendants failed to operate the mine continuously, and failed, without excuse, to produce coal, and discontinued finally operations in the summer of 1926; that defendant failed to care for tools and equipment and return the same to lessors at the termination of the lease and permitted the same to be carried away and damaged in violation of the lease; that they failed to keep the mine pumped clear of water during suspension of work, and that on these accounts and others the lease was forfeited.

Defendants admit that plaintiffs are own-

ers of the lands and equipment, also the execution of the mining lease attached to plaintiffs' petition, but they deny that plaintiffs had or were entitled to possession of said premises at the institution of the suit. They deny also the abandonment and forfeiture of the lease, and it is alleged that plaintiffs are estopped to claim forfeiture, for that on September 10, 1923, the said lease contract was assigned by the original lessee to the defendant, Guy Rees, with the knowledge and assent of the plaintiffs, and that the defendants Guy Rees and his associates, relying upon the assignment, made expenditures and operated the mine under said lease and made payments of royalties thereunder to plaintiffs, and that on the ____ day of _____, 1926, said defendants last named sublet the premises with knowledge and consent of plaintiffs to Will Eideschun, Leo Eideschun, Charles Banks, and W. K. Carter, who operated the property and paid royalties to plaintiffs, and that during the fall of 1926, Will Eideschun, Leo Eideschun, Charles Banks and W. K. Carter ceased to operate said mines, refused to surrender possession thereof, but that the original lessee secured possession of the property prior to the institution of suit and was preparing to operate the same by placing additional machinery and pumps and was prevented therefrom by the temporary injunction granted to the plaintiffs herein, and that the defendants have certain personal property on the premises taken possession of by plaintiffs and with reference to which they pray relief.

The evidence discloses that plaintiffs retained, always, through their tenant, possession of the 160-acre farm and used same for agricultural purposes; that there was a coal mine in good condition, together with tools, engine house, blacksmith shop, etc., located on said lands belonging to plaintiffs, and that this mine and equipment were taken possession of and operated for a few months by the original lessee, who later delivered the premises over to Guy Rees, Paul Rees, and M. L. Pitcock. In arranging for the transfer Guy and Paul Rees and the original lessee went to J. N. Adams' store in Crawford county, Ark., and asked for permission to transfer the lease from Bennight. They were advised that Sam McKinney, one of the owners, was critically sick, and his consent could not be obtained, but that he, Adams, would agree to enter into a new lease with these three men, however, not until either Mr. McKinney had recovered or died, but it was suggested that since Bennight was leaving the property, these three gentlemen might operate the mine temporarily until further developments. Sam McKinney died. His son John, Mr. Wallis and Mr. Adams went to the mine on the Sunday following and met Guy and Paul Rees and Pitcock, and there agreed on the terms of a new lease to these men from the owners, but that one of the heirs of Sam McKinney was a minor and it was necessary to have certain court action before that disability could be obviated. Later, Mr. Adams and his associates returned to the mine and found Bennight in charge and that the Reeses and Pitcock were out. Guy Rees returned later to Mr. Adams and explained that he had spent money which he had not recovered, and still desired a new lease, and was told by Mr. Adams that he, for himself, would agree upon a new lease, providing Mr. Wallis and the McKinney heirs would agree. On the following Sunday Guy Rees went to Mr. Adams' residence at Ft. Smith, and explained that he and his associates were ready for a new lease, and Mr. Adams replied that he and his associates would meet him at the mine two weeks later to arrange for said new lease. The owners desired that the new lease contain some changes in the terms of the lease. At the appointed time, Mr. Adams and his associates went to the mine and found the same in charge of one Banks, who was a stranger to the owners and who knew nothing of the new arrangement, and it was agreed that all the parties meet on the following Sunday. The owners kept the appointment, but the others failed to appear, and Guy Rees. in answer to a letter from Mr. Adams, wrote a letter containing this statement:

"When I was talking to you I thought you could fix up a new contract for these boys or one to me that I could transfer to them, and I would exchange the Bennight contract for the new one, as they owe me quite a bit on the deal yet. If you will let me know when you get the things fixed up, I will come down and make the exchange of contract, or if it is necessary for me to be there, I will come down."

Finally, the parties met at Ft. Smith, and the matter was thoroughly discussed and the terms of the new contract were agreed upon, but the same was not written because it was Sunday, but the same was written out during the following week. This transaction occurred in April, 1925. The contract was signed by the owners, but never was signed by the other parties. It was understood that this new contract was to be made and was made to Will Eideschun for

the benefit of himself and associates (Leo Eideschun, Charles Banks and W. K. Carter), after which Eideschun and his associates operated the mine from April, 1925, until May, 1926. The plaintiffs in error did not operate the mine during any of that period, but Eideschun and his associates operated the same under the name of Wolf Creek Coal Company, and paid royalties up to May, 1926, and perhaps a payment of $30.15 of the royalty was made in August, 1926, for coal which was mined perhaps in the preceding May.

Nothing more was done towards the execution of the written contract, and in November, 1926, the owners of the premises, the defendants in error here, went to investigate the mine and premises and found the place abandoned, the slope falling in, the blacksmith tools carried away, the house vacant and open, and everything gone to waste; water had not been pumped out of the mine and everything was open to the elements. There was a lock on the engine room, but the side door was open and nearly all tools gone; the powder magazine was locked, but the boards were pulled off the side big enough for a man to go through. The pipe going to the mine and the pipe leading to the fan house were broken, and one of the boilers was lying down on the side. Down in the slope the timbers were breaking and it was caving in. The cross-bars over the slope had commenced to rot. The mine appeared to be deserted, and it indicated that it had not been run for quite a while. Upon finding the premises in this situation, the owners posted written notices on the property and later served copy thereof on Guy Rees. These notices are dated November 30, 1926, and notify Bennight, Guy Rees, Paul Rees, Pitcock, Will Eideschun, Leo Eideschun, W. K. Carter and every other person, to stay off, and not to trespass upon the farm or mining premises upon pain of prosecution.

The evidence on the part of defendants was that Guy Rees bought the Bennight lease and paid him $1,350; that the mine at that time had been sunk about 75 feet, and that he and his associates spent considerable money in putting the mine in condition to operate; that it was with the consent of Mr. Adams that Eideschun and his associates were put in possession of the mine to operate it, and that they did operate it until August, 1926, and after they ceased to operate the same, he was unable to get them to surrender possession to him until November, 1926, after which he made preparations

to operate and was so engaged when the summons in the suit was served; that he had personal property on the leased premises amounting to several hundred dollars.

From consideration of the evidence, the court found the issues in favor of plaintiffs, but also found that the defendants had certain personal property on the property of the aggregate value of $260, and it was adjudged that defendants recover said property, or its value, from plaintiffs.

Two propositions are urged by plaintiffs in error: First, error of the court in overruling defendants' demurrer to the evidence. It is contended that this is a statutory action to quiet title and for possession of real estate, and that since plaintiffs allege that "they are now the owners of said above-described land and in actual possession thereof," and that there is no proof in the record to sustain this allegation that therefore the demurrer should have been sustained. It is contended further that the only proof as to possession was the fact that the owner went upon said premises, posted notices set out in the statement of facts, and caused a copy of same to be served upon the defendant Guy Rees. In support of this contention, counsel for the defendant cites C. O. S. 1921, sec. 466, and, also, Eaton v. Giles, 5 Kan. 24, and Christy v. Spring, 11 Okla. 710, 69 Pac. 864. It should be observed that the evidence in this cause with respect to possession went in without objection. In the Christy Case, supra, the court announces:

"The defendant had not the actual possession necessary to entitle her to maintain action under the section quoted. However, independent of the statute, an action to quiet title may be maintained by the holder of the legal title where he is not in possession, if the premises be vacant and unoccupied. Douglas v. Nuzum, supra." Morgan et al. v. McGee et al., 117 Okla. 212, 245 Pac. 888.

In the case of Wilson v. Cox, 100 Okla. 300, 229 Pac. 267, the court says:

"It has been held by this court in Levindale Lead & Zinc Mining Co. v. Fluke et al., 48 Okla. 480, 150 Pac. 481, following Groves v. Jennings, 46 Kan. 366, 26 Pac. 738, that section 466 of the Compiled Statutes of 1921, does not take away any of the previous existing equitable remedies, and that one who owns the legal title, though not in possession, may, independent of such section, maintain a suit to remove a cloud."

It is contended that the petition did not set up that the premises were vacant and unoccupied, but the proof, which we think

sufficient for that purpose, has been introduced, and now, if need be, the petition will be treated as having been properly amended. St. Louis-San Francisco Ry. Co. v. Simmons, 116 Okla. 126, 242 Pac. 151; Forry v. Brophy, 116 Okla. 99, 243 Pac. 506; Roxana Petroleum Co. v. Covington State Bank, 98 Okla. 266, 225 Pac. 375.

We think the proof is amply sufficient to show that the property was vacant and had been abandoned, the mine was caving in, the roof over same was falling down, the pumps were idle and rusty, the houses were either broken open or left open with the exception of one door, and a man could crawl through the side of the house which was locked; the dwelling house was vacant; the owners went upon the premises, found the same apparently abandoned and rapidly becoming valueless as a mine, and they put up notices thereon forbidding trespassers, and especially those responsible for the wrong, to go on the premises, and served a written notice upon Guy Rees. We think this was abundantly sufficient to show the abandonment of the premises and a reentering, if such were required, by the owners. It should be borne in mind that the possession of the owners in this land was not interrupted by the lease itself—that could result only from mining operations, and when that was abandoned, no re-entry was necessary. Monaghan v. Mount (Ind. App.) 74 N. E. 579.

The second point urged is that the judgment is not sustained by sufficient evidence. Under this head the plaintiffs in error urge that having made a substantial investment in this property, Guy Rees, after having turned the same over to Eideschun and Carter, and after they had ceased to operate the same, should be allowed to take the mine back and operate it under the terms of the Bennight lease. Plaintiffs in error recognize the various forfeiture provisions in the lease along with the provision that the lease should not be assigned without the consent of the lessors, but they argue that these conditions are all for the benefit of lessors and can be waived, and under this argument they cite Jones v. Moncrief-Cook Co., 25 Okla. 856, 108 Pac. 403. The reading of this evidence makes it clear that the plaintiffs had knowledge of, if they did not specifically consent to, the taking over of the property by Guy Rees and his operations for a while on the property were certainly known to them, for he was in complete control and paying royalties, which were accepted by plaintiffs. The evidence would also indicate that when Rees became embarrassed and could not operate the mine with profit, he turned over possession of the property to Eideschun and Carter, who operated the lease for a while and likewise paid royalties which were accepted by plaintiffs, but it is just as clear, not only from the evidence, but from the brief of plaintiff in error, that Eideschun and Carter ceased to operate the lease in August, 1926, and their brief at page 30 says that, after such ceasing to operate the same, they refused to deliver the lease to the defendants until the last of November, 1926, and "thereupon the defendants, to protect themselves and their investment in the mine, began preparations to operate it in terms of the Bennight lease." True, Rees operated the mine a while, and then assigned the lease in writing to Eideschun and Carter, who operated thereunder a while, and each party paid his royalties. These later occupants vacated and ceased to operate the mine. This was an open, substantial, and continuing breach of the lease which the parties recognized as being in force. What were the plaintiffs to do? Should they have permitted the property to remain idle, the slopes to cave in, the water to encroach upon the mine, the roof to fall in, the windows to be torn out of the houses, and the equipment to be carried out? Were they required to sit idly by and see their property ruined in this manner? Or were plaintiffs obliged to bring an action at law for possession when, under their contract, the lease terminated, and plaintiffs had resumed possession of the only part of the entire farm as to which their actual occupancy had been interrupted?

It seems to be the main contention of Guy Rees that since Eideschun and Carter had not paid to him the complete purchase price, plaintiffs owed him the duty of letting him repossess himself of the unexpired term of the lease and of the mining property and operate it in order to make himself whole. The plaintiffs were in nowise responsible for the arrangement for credit which Guy Rees claimed to have extended Eideschun and Carter for the payment of the balance of the purchase price of the lease, nor does the evidence show just exactly what the nature of that credit was, except, perhaps, it may be fairly inferred that the balance of the money was to be paid out of the coal produced, but that arrangement in nowise bound plaintiffs to the extent of compelling them to allow their property to be destroyed in order to protect Guy Rees, who had not protected himself. Moreover, plaintiffs in error readily admit that the property could

not be transferred from lessee or an assignee to another without the specific consent of plaintiffs, but no attempt is made to show that plaintiffs were even willing, much less did they consent, to the repossessing of the property by Guy Rees from Eideschun and Carter, so that the rather unsubstantial claim of Guy Rees that he repossessed himself of the property itself involved a breach of a vital portion of the lease.

We have carefully read the evidence and briefs, and we cannot arrive at the conclusion that the plaintiffs have waived any of the vital protective provisions of the lease, except to the extent of permitting Bennight to assign the unexpired term therein to Guy Rees and later the said Rees to turn over his interest therein to Eideschun and Carter.

These breaches were continuous breaches and jeopardized the property. There is nothing in the evidence to indicate that the plaintiffs were arbitrary or imposed any hardship upon any of the parties operating the lease, but it clearly appears that they were seeking in good faith to have their property continuously operated and protected, and they made no move against any of the parties operating the lease until their property was effectually abandoned and threatened with ruin, and when this condition of the property was made apparent to them, they took possession of the property, posted notices against trespassers and against those who had misused their property, or had allowed it to be misused, and served by the sheriff a like notice on Guy Rees, and as quickly as possible brought suit to cancel the lease, clear the title of the property, and enjoined the defendants against interference therewith. The following cases sustain the doctrine announced: Big Six Development Co. v. Mitchell, 1 L. R. A. (N. S.) 332, and note; Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 Pac. 33; Anthis v. Sullivan, 83 Okla. at p. 89, 203 Pac. 187; Blackwell O. & G. Co. v. Whited, 81 Okla. 45, at p. 50, 196 Pac. 688; Womble v. Pike, 17 Okla. 122, 87 Pac. 427. See, also, 40 C. J. p. 1026; 27 Cyc. 652.

We see nothing inequitable or unjust in this proceeding, and we find from an examination of the entire record that the action of the trial court in granting plaintiffs' relief, and in granting defendants such measurable relief as they were entitled to, is without error, and the judgment is strongly supported in the evidence, and that said judgment is not against the clear weight

thereof, for which reasons the judgment of the trial court is affirmed.

HERR, DIFFENDAFFER, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.