## DENKER v. MID-CONTINENT PETROLEUM CORPORATION.

### No. 499.

Circuit Court of Appeals, Tenth Circuit.

March 1, 1932.

---

Harry O. Glasser, of Enid, Okl., for appellant.

R. H. Wills, of Tulsa, Okl. (J. C. Denton, J. H. Crocker, I. L. Lockewitz, and J. P. Greve, all of Tulsa, Okl., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and KENNAMER, District Judge.

PHILLIPS, Circuit Judge.

Burchard Denker brought this suit against the Mid-Continent Petroleum Corporation to cancel an oil and gas lease on 160 acres of land entered into between Denker and Bina Denker, his wife, and Joe K. Barker on February 24, 1916. Such lease passed through assignments to the Petroleum Corporation, the present owner thereof.

The habendum clause of the lease reads as follows:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

The complaint alleged that the Petroleum Corporation's assignors drilled eight wells on such land between December 7, 1918, and July 23, 1921, and that all of such wells produced oil in paying quantities; that the Petroleum Corporation had failed to drill wells to offset certain wells drilled on adjoining land; that no wells had been drilled on the lease since July 23, 1921; that no inside locations had been drilled; that the Petroleum Corporation had breached its implied covenants to drill offset wells and to diligently develop the lease; and that none of the wells drilled were then producing oil or gas in paying quantities.

It prayed for cancellation of the lease as to that portion of the land which the Petroleum Corporation had failed to diligently develop.

The evidence established the following facts: The Petroleum Corporation's predecessors in title drilled eight wells along the east and south lines of the lease. The first well was completed on February 20, 1919, and the last on December 21, 1921. At the time of the trial below, one of such wells was producing three barrels a day, six were producing one-half barrel each, and one was not producing oil in substantial quantities. Up to November 30, 1930, forty days prior to the trial, the Petroleum Corporation and its predecessors in title had expended $341,202.25 in the development of such lease, and had received $425,380.03 from the sale of oil, gas, and other products, and had therefore realized a net profit of $84,677.78.

Denker sold and repurchased the land after making the lease. Up to November 30, 1930, he and his successors in title had received $56,548.04 in royalties.

Of the wells not offset, Wishard well No. 15 had an initial production of fifty barrels and the others did not produce oil in paying quantities. Well No. 15 was drilled to a depth of 2,278 feet at a cost of approximately $25,000. The production from this well was wholly insufficient to justify the cost of drilling an offset well. The wells drilled along the south and east lines of the lease adequately protected it from drainage. The lease was on the edge of the structure. The heavier production was to the south and east of the lease. Dry wells had been drilled to the north and west thereof, and the sands dipped sharply to the northwest. Wells drilled on the remainder of the lease would probably have resulted in either dry holes or lighter production, and it would have been imprudent to drill them under existing conditions. The Petroleum Corporation was

ready, able, and willing to drill additional wells if a change in conditions made it prudent so to do.

At the time of the trial, the daily production on the lease was not equal to the cost of operation, and the lease was being operated by the Petroleum Corporation at a slight loss. Such loss will continue until there is either an increase in the price of oil or in production. New methods being developed will probably increase production.

■ In order to comply with the implied covenants of a lease to drill offset wells and to diligently develop the lease, a lessee must do that which, under the circumstances, an operator of ordinary prudence, having regard to the interests of both lessor and lessee, would do. Brewster v. Lanyon Zinc Co. (C. C. A. 8) 140 F. 801; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069, 1072; Goodwin v. Standard Oil Co. (C. C. A. 8) 290 F. 92; Humphreys Oil Co. v. Tatum (C. C. A. 5) 26 F.(2d) 882; Orr v. Comar Oil Co. (C. C. A. 10) 46 F.(2d) 59, 63; 40 C. J. p. 1067, § 684.

■ The trial court found, and the evidence fully justified the finding that, tested by the above standard, the Petroleum Corporation had complied with such covenants.

There is nothing in the evidence to show that the Petroleum Corporation has abandoned the lease, and the trial court found that it had not.

One question remains: Has the lease expired by its terms because oil is not now being produced therefrom in paying quantities?

In Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 330, 48 A. L. R. 876, and in Parks v. Sinai Oil Co., 83 Okl. 295, 201 P. 517, the court held that the word "produced" in the habendum clause of an oil and gas lease means "produced in paying quantities." There is respectable authority to the contrary. Thornton on Oil and Gas, § 150; Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N. E. 1043; McGraw Oil & Gas Co. v. Kennedy, 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (N. S.) 959; South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848. The authorities last cited hold that where the word "produced" only is used, the lease continues as long as oil is produced in substantial quantities, regardless of the question of profit.

■ Gypsy Oil Co. v. Marsh, supra, and Parks v. Oil Co., supra, were decided after

the lease in the instant case was entered into, and for that reason are not controlling, but persuasive only.

However we find it unnecessary to decide this controverted question. We will assume, without deciding, that "in paying quantities" was implied.

■ When an oil and gas lease is for a specified term and as long thereafter as oil and gas is produced therefrom in "paying quantities," oil is produced in paying quantities within the meaning of the lease as long as the returns from a well drilled in accordance with the lease exceed the cost of operation after completion, although the well may never repay the drilling costs, and the operation as a whole may result in a loss. Aycock v. Paraffine Oil Co. (Tex. Civ. App.) 210 S. W. 851; Lowther Oil Co. v. Miller-Sibley Oil Co., 53 W. Va. 501, 44 S. E. 433, 97 Am. St. Rep. 1027; Young v. Forest Oil Co., 194 Pa. 243, 45 A. 121; Gypsy Oil Co. v. Marsh, supra; Barbour, Stedman & Co. v. Tompkins, 81 W. Va. 116, 93 S. E. 1038, L. R. A. 1918B, 365.

■ Furthermore such phrase is to be construed from the standpoint of the lessee, and by his judgment if exercised in good faith. Gypsy Oil Co. v. Marsh, supra; Aycock v. Oil Co., supra; Lowther Oil Co. v. Miller etc., supra; Barbour, Stedman & Co. v. Tompkins, supra; Young v. Oil Co., supra.

■ Ever since the commencement of this action the oil industry has been and still is passing through a period of depression and many oil producing operations, due to the low price of crude oil, are being carried on at a loss, which under normal conditions would result in profit.

We are of the opinion that the parties, when they used such phrase, contemplated normal conditions and not the unusual conditions to which we have referred, and intended that the question of whether the requirements thereof were being met should be determined in the light of such normal conditions; and that if the wells would produce a profit over operating expenses under normal conditions and the Petroleum Corporation is willing to continue to operate them at a loss believing in good faith that normal conditions will return and the wells will ultimately produce a profit over operating expenses, it cannot be said that the wells are not producing oil in paying quantities within the meaning of the lease.

■ One of the wells on this lease is producing three barrels a day. Such wells usually

continue to produce for a long period of time. It is common knowledge that three-barrel wells under normal conditions can be operated at a profit. It is our conclusion therefore that the lease has not terminated by reason of failure to produce oil from the leased premises.

The decree is affirmed.