## HUDSON et al. v. LYONS.

No. 33016.    Nov. 3, 1947.

*186 P. 2d 309.*

Q. D. Gibbs, of Okmulgee, for plaintiffs in error.

R. A. Hockensmith, of Okmulgee, for defendant in error.

CORN, J. In 1912 Ada Summers Hudson, one of the plaintiffs, and her husband leased the property herein involved (120 acres) to one French, father of the defendant herein, for the primary term of five years. French, during his lifetime, drilled and completed three producing oil wells. No other wells have been drilled upon the property, and two of these wells were still pro-

ducing at the time of the trial, the lease having devolved to and being operated by the defendant.

The 120-acre tract in question is a part of a leasehold known as the "Summers Allotments" which form a square. This lease provided the lessee might operate the entire leasehold (Summers Allotments) as one property; and further provided the lessee was to offset producing wells on cornering or adjacent land within 30 days after completion or forfeit the lease.

The plaintiffs, L. V. Murray and Eva Mae Murray, hereinafter referred to as the Murrays, obtained their interest in the property in October, 1944, when they purchased the surface and one-half of the oil and gas rights, subject to defendant's existing rights.

January 14, 1946, a letter was written asking defendant to cancel the lease. May 18, 1946, plaintiffs' attorney mailed defendant a notice to release the lease, and also a form of release which he asked the defendant to execute. The notice to release stated the lease had expired ". . . by reason of the fact that neither oil nor gas has been found and produced from the lease in paying quantities for a long time. . . ."

June 5, 1946, plaintiffs filed suit to cancel the lease on the ground there had been no production in paying quantities since January 1, 1943, and defendant had no rights under the lease subsequent to that date.

Plaintiffs thereafter amended their petition, setting forth as additional grounds for cancellation the completion of a paying well upon adjacent land, and sought cancellation of the lease by reason of defendant's failure to drill an offset well within 30 days, according to the terms of the lease.

Defendant's answer admitted the lease, but alleged the wells mentioned had at all times produced oil in paying quantities, and that the provisions of the lease gave defendant the right to operate the premises jointly with the remainder of the "Summers Allotments"; that this had been done and the productivity of all wells upon the property had been prolonged. Defendant alleged in response to a verbal agreement she had taken steps to procure the drilling of another well upon the lease, but when attempting to move equipment onto the land for this purpose the Murrays had interfered with the efforts to the extent of stopping the work. There was other evidence showing defendant had entered into a contract for the drilling of another well upon the property, based upon oral negotiations with the contractor.

Plaintiffs' reply denied there had been a verbal agreement regarding drilling of another well or that defendant had done any work upon the premises after the Murrays went into possession, or that they were in any manner estopped to deny validity of the lease; and also denied that oil and gas were being produced in paying quantities, but alleged that only approximately 537 barrels of oil had been produced since March 31, 1941, and that this was insufficient to constitute production in paying quantities.

Defendant testified she had tried to work this matter out amicably with plaintiffs prior to suit. The production records, kept by the defendant, showed net profits from the entire leasehold as follows: 1943, $1,011.71; 1944, $768.73; 1945, $977.91; 1946, first six months, $431.80.

Plaintiffs raised the issue as to an offset well, a producing well having been drilled on adjacent property. Defendant offered testimony of oil operators familiar with the area that a well more than 200 feet away was not considered an offset in 1912 when the lease was made. Plaintiffs' witnesses admitted that the well on the adjacent property was approximately 466 feet from the corner of defendant's lease. The testimony also showed that a dry hole had been drilled nearer to the

corner of the plaintiffs' land than the new well which they asserted defendant was bound to offset.

The trial court took the matter under advisement and thereafter found the issues generally in favor of defendant and rendered judgment accordingly.

The lease in this case does not provide "and as much longer as oil or gas is produced therefrom in paying quantities," but provides "as much longer as oil or gas is produced therefrom." It is conceded that oil is still being produced from two wells on said lease.

Plaintiffs contend the trial court should have decreed cancellation of the undeveloped portion of this lease because of the breach of the implied covenant to develop for a period of over 34 years, and that a prudent operator would have drilled an offset to the well completed September 19, 1945, upon the land adjoining plaintiffs' property to the northwest.

The evidence shows that when defendant learned plaintiffs desired another well, she commenced negotiations in an effort to have another well drilled; that she entered into a written contract for this purpose about the time the suit was filed. She also attempted to move equipment onto the lease, but was interfered with by the Murrays.

The record reflects the following stipulation, to wit:

"It is stipulated between plaintiffs and defendant that they rest on the matter of an effort to move equipment in at the gate on the Murray lease. Attorney for plaintiff and attorney for defendant having gotten together and agreed that they would let the matter rest until the court could decide or could get it settled some way."

Equity will decree a forfeiture of an oil and gas lease where justice will be effectuated, the granting of such relief depending upon the circumstances of the particular case. Magnolia Petroleum Co. v. Rockhold, 192 Okla. 628, 138 P. 2d 809.

Examination of the record discloses that the facts and circumstances were not sufficient to justify cancellation of this lease, and the trial court's judgment, therefore, is not against the clear weight of the evidence.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and LUTTRELL, JJ., concur.