Paul **COTNER** and Nora Cotner, Plaintiffs in Error,

v.

Charles J. **WARREN** and W. E. Thompson, Defendants in Error.

No. 37915.

Supreme Court of Oklahoma.

Sept. 23, 1958.

R. M. Mountcastle, Muskogee, E. H. Broaddus, Wagoner, for plaintiff in error.

Fred W. Martin, James B. Martin, Wagoner, Paul E. Simmons, Broken Arrow, for defendants in error.

DAVISON, Justice.

This suit was instituted by the plaintiff, Charles J. Warren, oil and gas lessee, against the defendants, Paul Cotner and his wife Nora Cotner, owners and lessors of an 80 acre tract of land in Wagoner County, Oklahoma, for the purpose of quieting his title to a leasehold estate in said lands. The parties will be referred to as they appeared in the trial court.

Immediately before bringing this suit, plaintiff purchased the leasehold estate existing under a certain oil and gas lease, covering said lands, executed by the defendants on the 28th day of December, 1953, "for a term of one year from date, and as long thereafter as oil or gas or either of them, is produced from said land by the lessee." There was one small producing well on the property, the primary term of said lease having theretofore expired. The

defendant, husband, was employed by the lease operator as pumper for the well. On September 7, 1956, plaintiff's predecessor directed Cotner to shut the well down which he did. On February 18, 1957, plaintiff purchased the working interest in the lease and two days later filed this suit seeking to quiet his title to the leasehold and to enjoin the defendants from keeping him off of the property and from operating the well.

It was the contention of the defendants that, with the voluntary cessation of production, the lease terminated under its own terms. Plaintiff contends that the cessation was only temporary and for a good reason and that the defendants were agreeable to the temporary closing down of the well. The trial court held generally for the plaintiff, finding that the plaintiff had not abandoned the lease nor had the same expired by its own terms. The defendants have appealed therefrom.

This court has not heretofore been called upon to determine when and under what circumstances such a lease terminates because of the shutting down of the only producing well on the leased premises, by the lessee, after the expiration of the primary term. In the case of Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187, it was held that such a lease was terminated when the lessee plugged and abandoned the only producing well. In the case of Woodruff v. Brady, 181 Okl. 105, 72 P.2d 709, 113 A.L.R. 391, no production was had either during the primary term or afterwards. The cases of Beatty v. Baxter, 208 Okl. 686, 258 P.2d 626, and Postier v. Postier, Okl., 296 P.2d 138, deal not with the rights and duties of lessees, but with the rights and interests of owners of terminable mineral estates under the mineral deeds. The difference between the two positions was recognized in both of the last two above cited cases. However, some rules of law are applicable alike to both.

Whether or not the lease or mineral estate has terminated depends upon the surrounding facts in each case and the determination thereof by the trial court in an action of equitable cognizance should be sustained unless clearly against the weight of the evidence. Beatty v. Baxter, supra.

The Kentucky court, in the case of Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, 254, had before it a factual situation much the same as here involved. In that opinion it was said,

"Nor are we willing to adopt the rule that a lease which is to continue for a definite period, and so long as oil or gas is produced in paying quantities, ipso facto terminates whenever production or development ceases for a brief period of time. On the contrary, we have reached the conclusion that the only fair and just rule is to hold that the lease continues in force unless the period of cessation, viewed in the light of all the circumstances is for an unreasonable time."

The quoted rule seems to be the most equitable one in such cases. One much more favorable to the lessee is followed in Louisiana where, "in order to cancel the lease, there must be some evidence that the wells thereon are no longer capable of producing oil or gas in paying quantities; or that the lessee, in closing down the wells, has done so with the intention of abandoning same." Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336, 341. In Texas, the rule is much more favorable for the lessor although, there, it "has been modified when there is only a temporary cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like." Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 784.

After thorough deliberation, we conclude that the rule quoted above from the Lamb v. Vansyckle case is the soundest and most equitable and the same is adopted. Under that rule, the controlling factual finding is whether on not the temporary stoppage in production was for an unreasonable length of time. In the case now being considered,

the cessation was for a period of from five to six months. The lease was owned at that time by several co-tenants among whom dissensions had arisen. The then operator told Cotner that they were having trouble and that as soon as it was worked out they could go ahead and get a new well drilled. The testimony is in conflict as to whether or not Cotner agreed to the temporary shut down. In any event, the partnership differences were resolved by plaintiff's purchase of the lease, immediately after which he attempted to go on the premises to resume operation of the existing well and to drill another. The defendants refused to permit him entry thereon.

■ Under these facts, the trial court was warranted in finding that the well had not been shut down for an unreasonable length of time and that the lease had not expired. The judgment, not being against the clear weight of the evidence, will not be disturbed by this court on appeal.

Judgment affirmed.

WELCH, C. J., and JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

CORN, V. C. J., and HALLEY and WILLIAMS, JJ., dissent.

CORN, Vice Chief Justice (dissenting).

I cannot agree with the conclusions expressed in the majority opinion.

The holding therein amounts to an amendment of the lease by the court. Its effect is to change the "as long thereafter" clause to read "It is agreed that this lease shall remain in force for a term of one year from date, and as long thereafter as oil or gas, or either of them, can be produced from said land by the lessee;" as distinguished from "is produced".

It must be borne in mind that the primary consideration is the development of the lease by the drilling of wells thereon and, in the event of the discovery of oil or gas, the production and sale thereof. It is only by the production and sale of oil and/or gas that the lessor can realize anything therefrom, the basic consideration for the execution thereof.

In line therewith this court has heretofore, without exception, held that where an oil and gas lease provides that it shall remain in force for a specific term, and as long thereafter as oil or gas or either of them is produced, the term "produced" means produced in paying quantities to the lessee as determined by its judgment in the exercise of good faith. Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876; Woodruff v. Brady, 181 Okl. 105, 72 P.2d 709, 113 A.L.R. 391; Denker v. Mid-Continent Pet. Corp., 10 Cir., 56 F.2d 725, 84 A.L.R. 756; Henry v. Clay, Okl., 274 P.2d 545. In order to protect the lessor we have also, without exception, held that he may controvert lessee's determination that it is producing in paying quantities as applied in the extending of the lease beyond the primary term, and it becomes a question for judicial determination. Okmulgee Supply Corp. v. Anthis, 189 Okl. 139, 114 P.2d 451; Gallaspy v. Warner, Okl., 324 P.2d 848.

It follows that after discovery of oil or gas during the initial term of the lease the lessee may continue to produce same until it can no longer be produced in paying quantities. Hudson v. Lyons, 199 Okl. 348, 186 P.2d 309. Consistent therewith we have held that such well or wells may be temporarily shut down and the production stopped for the purpose of re-working of said well or wells in a bona fide attempt to increase the production or for further exploration at a greater depth, and with the intent to return and produce the oil or gas discovered during the initial term if other oil or gas is not discovered at a greater depth. Western States Oil & Land Co. v. Helms, 143 Okl. 206, 288 P. 964, 72 A.L.R. 357; Woodruff v. Brady, supra.

In this connection we have held that in such a case "production in paying quantities" means not only discovery and ability to produce oil and gas or either of them, but the taking out of such oil or gas in

pursuance of the covenants and purposes of the lease in such quantities as will pay a profit to the lessee over the operating expenses. Walden v. Potts, 194 Okl. 453, 152 P.2d 923.

The requirement of continuous production and marketing of oil and gas therefrom is tempered by the foregoing rules permitting the temporary shutdown for a reasonable period of time required by loss of market or for the purpose of making a bona fide attempt to increase production or seek production at a greater depth with the intent to return to the original production in the event of failure. This is not only consistent with the rights of the lessee but is consistent with the basic consideration for which the lessor executed the lease.

The facts in this case demonstrate none of those contingencies. The shutting down of the well was the result of a disagreement between the partner lessees. There appears no reason under the record here, which would have prevented the operating partner from continuing the production during the period he was settling his differences with the other partners. The runs could have been impounded. Thereby the lessor, as well as the lessees, could have been protected. In this connection the record shows that plaintiff, as the pumper, followed the orders of his employer, the lessee operator and shut down the well.

The rule announced in the case of Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, adopted by the majority opinion is consistent with the rules adopted by this court. However, in my opinion it does not sustain the conclusion reached in the majority opinion.

The result in that case was predicated upon the fact that a major consideration, in the nature of a lease bonus, was paid for the lease and that at all times during the period from the date of the expiration of the initial term of said lease and the date of sale to the assignee, less than 2 months (56 days) the lessee was making every effort to raise funds with which to continue operation.

Under the facts in the case at bar, there is nothing which justifies a one way application in favor of a lessee to the exclusion of the rights of the lessor and the provisions of the lease contract, the moving consideration for the execution of the lease. The primary term of the lease had long expired before the cessation of production. There was no production thereafter for approximately six months. The equitable considerations in the Lamb v. Vansyckle, supra, case are not present.

Equitable considerations should always be before us. Yet I cannot acquiese in an opinion that in the guise thereof we change the settled interpretations of this court and the provisions of the contract between the parties made in the light thereof. If as under the circumstances demonstrated in this case the well can be shut down without cause for six months, there appears no logical reason why such shut down period could not be extended to a year or even two years, if the lessee suggested such shut down was merely temporary.

The true and equitable rule which in my opinion should be applied in this case is that under an oil and gas lease for a specific term "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee", a lessee after having discovered oil and/or gas in paying quantities during the initial term of the lease must continue to produce oil or gas until the economic exhaustion of the oil or gas discovered during the initial term, producing and marketing the same in pursuance of the covenants and purposes of the lease in such quantities as will pay a profit to the lessee over the operating expenses, with the privilege, however, of temporarily stopping production thereof for a reasonable period of time required by loss of market or for the purpose of the re-working of the well in a bona fide attempt to increase the production, or for the purpose of further exploration at a greater depth, with the intent to return and produce the oil or gas discovered during the initial term if other oil and/or gas is not discovered at a greater depth. A prop-

er application of this rule would require the reversal of the judgment of the trial court.

I respectfully dissent.

I am authorized to state that HALLEY and WILLIAMS, JJ., concur in the views expressed herein.