No. 15,054.

Mountain States Oil Corporation *v.* Sandoval.
(125 P. [2d] 964)

Decided May 4, 1942.

Mr. Frank H. Hall, for plaintiff in error.

Mr. John N. Mabry, for defendant in error.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

For convenience, plaintiff in error will hereinafter be mentioned as lessee, and defendant in error will be designated as lessor. Lessor brought this action against lessee alleging, inter alia, the execution of oil and gas leases between the parties on or about June 29, 1925; that lessee immediately took possession, which has continued to date; that since 1927 lessee has continuously

taken gas from the premises, refined and marketed the same, and appropriated practically all proceeds to its own use; that since 1927 it has neglected, failed and refused to further explore said premises, either to a greater depth of existing wells or to drill other wells, although requested by lessor so to do; that since May 31, 1938, lessee has failed, refused and neglected to pay lessor any rent or royalties as required by the leases; that lessee is insolvent. He asked that a receiver be appointed and the leases cancelled.

The case was tried to the court. After lessor had introduced his evidence and rested, lessee moved for dismissal of the complaint, which was denied, and its counsel elected to stand on that motion. The court, after findings, entered judgment against lessee and in favor of lessor in the sum of $1,129.50 as the amount due for royalties under the leases from June 1, 1938, to October 16, 1939, cancelled all the leases and appointed a receiver. The judgment provided, however, that if lessee in good faith resumed drilling operations on said premises under said leases within ninety days from the date of judgment, the same should be vacated, and the court retained jurisdiction for that purpose. Lessee never resumed drilling operations. We denied the application of lessee for supersedeas except as to the appointment of a receiver, as to which it was granted.

Counsel for lessee urges four major points for reversal of the judgment, as follows: (1) Fatal defect of parties plaintiff; (2) the judgment of $1,129.50 is not supported by the evidence; (3) the court committed error in ordering the leases cancelled, because, even if there was not full compliance with the leases, they should not have been cancelled in toto; (4) error in the appointment of a receiver.

To a helpful solution of the problems presented for our consideration, we quote portions of the leases as follows:

"2. This lease shall remain in force for a term of ten

(10) years and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them is or can be produced.

\* \* \* \*

"4. \* \* \* Wells should be considered as producing wells only when oil or gas are found in commercial quantities. \* \* \*.

"5. The lessee, his heirs, successors, administrators and assigns shall pay to the lessor his heirs, successors, administrators and assigns a royalty equal to the market value of one-eighth net of all gasoline manufactured or extracted from gas in the event gasoline only is marketed but in the event the residue of gas is marketed after extracting gasoline therefrom the lessor his heirs and assigns, shall be entitled to a royalty equal to the market value of one-eighth net of all residue gas sold. \* \* \*.

\* \* \* \*

"14. Lessee may at any time surrender this lease by delivering or mailing a release thereof to the lessor, or by placing a release thereof of record in the proper county.

"15. It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally, judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions or stipulations.

\* \* \* \*

"18. \* \* \* It shall be the privilege of the lessors, \* \* \* to have access to the books and records of production, \* \* \* of the lessee \* \* \* for the purpose of ascertaining the correct quantity of oil or gas produced and sold."

Some of the facts disclosed by the record are as follows: Lessee went into possession of the premises, con-

sisting of approximately 6,000 acres, in August, 1924. For many years before that time the property was known as a gas field. Within five months after possession the first gas well was brought in. Thereafter three other wells were successfully drilled, the last one in 1927 or 1928. The depth of the wells vary from 1,900 to 2,150 feet. Since the discovery of the last well lessee has not made any further explorations or drillings on these premises, although requested by lessor to do so. Since that time lessee did drill two other wells in the vicinity of lessor's premises, but whether production was obtained in paying quantities, the record does not disclose. An absorbtion and refining plant was erected by lessee at a cost of $125,000, according to the president-manager of the lessee company, on which the tax schedule, signed by its officers in 1932, gave the value as $11,000. During the seven years prior to the trial of this case the plant was in daily twenty-four-hour operation, refining and producing a daily average of 410 to 412 gallons of gasoline. The plant has a refining capacity of 6,000 gallons per day. Practically all of the production was sold by lessee to a local company controlled by the president-manager of lessee, which was operated by his son. There was a market for more than 400 gallons daily for this gasoline by others in the Trinidad area, but owing to the necessity for blending before sale, this source had its limitations. Several reasons were given why there was no further development for gas or oil on lessor's premises after 1927, but the primary reason seems to have been lack of funds. There is evidence that lessee sold stock to the amount of $850,000. Lessee discontinued the payment of corporation tax to the state in 1939; it also defaulted in the payment of unemployment insurance. The plant was mortgaged in 1931 in the amount of $2,800, which was necessary in order to pay a judgment in favor of lessor, obtained in a previous suit litigated to this court involving the failure to pay royalties. The president of lessee claims to be its

creditor, in the sum of $30,000. There are other substantial debts. General taxes have not been paid since 1939. It seems that only through litigation is lessor able to collect royalties. Since the commencement of this litigation another suit has been filed against lessee to collect royalties from October 17, 1939. Upon denial by us of supersedeas, lessee paid the judgment in the instant case. No royalties have been paid since the date last mentioned. The record indicates that there was no disposition on the part of lessee to be helpful in any way in the development of the facts. Lessee failed to fully comply with the request of lessor to produce production sheets and other records for the purposes of trial.

■ 1. When lessor rested his case counsel for lessee moved to dismiss the complaint because of fatal defect of parties plaintiff, in that Louise M. Sandoval, wife of lessor, and whose name is signed to the leases, is an indispensable party. The record discloses, and the court found, "that Mrs. Sandoval had no legal right or title to the same, and that her signature thereto was a mere formality, and under request of defendant company." She was, therefore, not an indispensable party to this litigation, and the court properly denied the motion to dismiss lessor's complaint.

■ 2. At the time of the denial of this motion to dismiss, counsel for lessee elected to stand on the one proposition raised thereby. Thereafter judgment was entered in favor of lessor, and lessee was allowed ten days within which to file a motion for new trial. The other grounds urged in support of reversal are raised by the motion. The failure of lessee to offer evidence on the subject of the terms of the lease, and its operation thereunder, may be detrimental to lessee. *Johnston v. Wanamaker Ditch Co.,* 95 Colo. 551, 38 P. (2d) 907. On review, the record must be viewed in the light most favorable to the successful party. *Vigil v. Pacheco,* 95 Colo. 405, 36 P. (2d) 766. Counsel for lessee could have

been more helpful in his brief had he followed rule 115 (c) (3), R.C.P. Colo., in presenting his statement of facts "with appropriate folio references." The contention that the gas used in the production of gasoline came from six rather than four wells on lessor's structure does not seem to be sustained by the record. There is evidence that two more wells were drilled subsequent to 1927 on other lands adjacent to lessor's premises, but there is no substantial evidence that there was production in paying quantities therefrom or that it was piped to the production plant. The evidence as to the market value of the gasoline over the period of time here involved also is sketchy, but we think it is sufficient to show that it was at least four and a half cents per gallon at the plant. There was no full compliance with the request of lessor that lessee furnish him with production sheets, and the sheets introduced in evidence disappeared after trial. The information with respect to the quantity of gasoline produced, upon which lessor is entitled to royalties under the lease, is peculiarly within the knowledge of lessee, and the reluctance exhibited by it to be helpful by furnishing this information is significant. The production of gasoline at the plant after extraction from the gas, in relation to the market value, is the measure upon which the royalties are based. The contention of lessee that the production of gas from the lands leased by lessor is the limit of lessee's liability, would be correct if the record did show that gas from other wells was used in the production of gasoline at the plant during the period in question. Under all these circumstances, it is our opinion that there was sufficient evidence to sustain the judgment for royalties. It should be noted that no specific time is set in the leases for the payment of royalties to lessor. Production sheets are made daily, and it would be a fair conclusion that a reasonable time within which the royalties should be paid would be on the first of each month.

3. Counsel for lessee concedes that there is an

implied covenant contained in these leases, "that after production has been obtained, that the leased property shall be developed in a manner that is reasonable and prudent, considering the circumstances and conditions." Perhaps a better statement of implied covenants in gas and oil leases, such as those in the case at bar, is that found in Thornton Oil and Gas — Willis (5th ed.), section 503, reading as follows: "The implied covenants in an oil and gas lease are generally four, to drill, to develop after discovery of oil or gas in paying quantities, to operate diligently and prudently and to protect the leased premises against drainage. The basis of the implication in each instance is the presumed intention of the parties. 'Whatever is implied in a contract is as effectual as what is expressed. Implication is but another name for intention, and if it arises from the language of the contract when considered in its entirety, and is not gathered from the mere expectations of one or both of the parties, it is controlling. Light will be thrown upon the language used, and the intention of the parties will be better reflected, if consideration is given to the peculiar and distinctive features of mineral deposits which are the subjects of the lease.' * * * ." The inner quotation in this statement is from the case of *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, one of the leading cases on implied covenants in oil and gas leases. While the facts in that case are not similar to those in the instant case, some of the legal principles enunciated therein are applicable here.

██ Whether the conceded implied covenants in the leases before us have been breached is primarily a question of fact. The court found "that the defendant has not used due diligence in developing the property for either oil or gas." In a broad view of the testimony as disclosed by the record, sufficient facts were established to warrant this finding as applied to that portion of lessor's premises not related to the four wells which were discovered prior to 1928, and which ever since

have been in continuous production. Evidence of failure to do ·any further exploration development work or drilling after 1927, a period of approximately fourteen years, on that portion of the premises, is substantial. The plant had a rated capacity of 6,000 gallons of gasoline daily, and only a little over 400 gallons were produced. All the equipment necessary for further drilling was located on the premises, and free fuel for operation in the form of gas was provided by the wells. There also was evidence of a greater market demand for gasoline in the Trinidad area. There is evidence which indicates that lessee was concerned more with promotion than production. The constant failure to regularly pay the royalties stipulated in the leases also is a factor that has some bearing on this question. The primary consideration for the leases flowing to lessor, were the royalties to be received from a proper and continuous production after it was developed in paying quantities.

In construing these leases, under the evidence adduced, we have in mind our opinion in the case of *Lanham v. Jones,* 84 Colo. 129, 268 Pac. 521, in which we stated (p. 133): "In 1 Thornton's Law of Oil and Gas (4th Ed.), sec. 85a, p. 261, the author says that instruments of this character are construed most favorably to development, that time is the essence of the contract, and the real motive for the giving of such instruments is the development of the leased property. Therefore, such a lease or option is properly construed strongly against the lessee so as to secure such speedy development."

The permission for further development within ninety days after judgment was not exercised by lessee. As to those portions of the leased premises not related to or **affected by the four wells** to which we have referred above, we are of the opinion that cancellation is warranted by the evidence and that the holding is in harmony with equity and good conscience.

As to that portion of the leased premises relat-

ing to the four wells in production since 1928, gasoline seems to have been produced continuously therefrom in commercial quantities. Whether as to that portion of the premises, having in mind section "2" of the lease above quoted, there could reasonably be further development in contiguous territory, by drilling new wells or by increasing the depth of the four wells now in existence, the evidence disclosed by the record is not explicit. We are persuaded that further hearings on these questions would develop more substantial facts, from which a finding could be made that would be equitable and just. We do not here attempt to say what specific factors should be considered in a determination of further development as to this portion of the leased premises. Such matters must be left to the trier of the facts. If cancellation as to this portion of the premises is not warranted by the facts, the court should determine and define the specific area surrounding the four wells in question which would be exempt from cancellation under this proceeding, and any other conditions that may be reasonable and just under the circumstances.

4. The money judgment for royalties was paid by lessee after the denial of supersedeas. Under these circumstances we see no present need for a receiver. We do not, however, attempt to say whether the appointment of such an official may or may not be necessary in the light of future developments.

The money judgment for royalties is affirmed. The judgment as to the cancellation of the leases is reversed and the cause remanded, with directions that it be modified to harmonize with the views herein expressed, and that the order for a receiver be vacated. The costs in this case to be assessed against lessee.

Mr. Justice Hilliard not participating.