L. D. TOWNSEND et al., Plaintiffs in Error,

v.

CREEKMORE–ROONEY CO., a copartnership composed of Thomas A. Creekmore, now deceased, and L. F. Rooney, et al., Defendants in Error.

No. 38855.

Supreme Court of Oklahoma.

Dec. 27, 1960.

Rehearing Denied Jan. 31, 1961.

P. D. Erwin, Chandler, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendants in error.

BERRY, Justice.

The parties, who appear here in the same relative position as they appeared in the trial court, will be referred to as they appeared in said court or by name.

On March 29, 1950, plaintiffs, L. D. and Alma Townsend, granted to defendants, Creekmore-Rooney Company, an oil and gas lease covering the E/2 of the NE/4 and the NW/4 of the NE/4, Sec. 5, T. 13N, R. E, Lincoln County, Oklahoma. This lease is referred to by the parties as the "Myrtle Townsend" Lease and in referring to said lease herein we will use said reference. The lease provided that same should "remain in force for a term of two (2) years from date, and as long thereafter as oil or gas, or either of them, (was) produced from" the land.

During the primary term of the lease, test wells for oil and gas were completed on the NW/4 NW/4 NE/4, and the SE/4 SE/4 NE/4 which wells initially produced both oil and gas.

On August 16, 1955, plaintiffs instituted this action to cancel the above referred-to lease and for damages allegedly resulting from defendants' failure to drill wells offsetting wells drilled upon land immediately west of plaintiffs' land. At the trial of the case, the demurrer interposed by defendants at the conclusion of plaintiffs' case in chief was sustained and their action was dismissed. The appeal which followed resulted in the opinion which is reported in Okl., 332 P.2d 35.

In so far as pertinent to the issues presented by this appeal, we held in substance in said opinion that a lessee under the provisions of a lease such as the one before us has only a limited estate following expiration of the primary term of the lease; that where production is had under such a lease there is an implied agreement that "the lessee will exercise diligence under all the facts and circumstances of the case and operate the lease to make it remunerative to both parties"; that where lessee's failure to market oil and gas for an extended period is shown and said failure is not explained, the lessor has made a prima facie case for cancellation and a demurrer to the lessor's evidence should not be sustained. The judgment of the trial court was reversed and the case was remanded for new trial on the issues presented by the petition.

On June 15, 1959, this case was tried anew. At the conclusion of the evidence, judgment was entered in favor of the defendants. From order of the trial court denying plaintiffs' motion for new trial, this appeal was perfected.

The pertinent evidence bearing upon the issues presented by the petition can be summarized as follows:

The first well drilled on the Myrtle Townsend Lease was drilled in 1950 and the second well was apparently drilled in 1951. During said years, wells were also drilled on the Lucy Adams Lease covering the E/2 of the NW/4 and the SW/4 of the NE/4 of Sec. 5. A well was drilled on each 10-acre tract of the first described 80 and one was drilled on the NW/4 of the last described 40. The first referred-to 8 wells were completed as oil wells but also produced casing-head gas. The last referred-to well was completed as a gas well. It will be noted that a well was not drilled on the Myrtle Townsend Lease which would offset an oil well and the gas well drilled on the Lucy Adams Lease. Plaintiffs maintain

that defendants' failure to drill an offset well on the SW/4 of the NW/4 of the NE/4 of Sec. 5 resulted in oil and gas being drained by the oil well and gas well on the Lucy Adams Lease which are immediately west and south of the described 10 acres.

Only three wells were drilled on the SE/4 of Sec. 5 and only two wells were drilled on the S/2 of Sec. 4. All of these wells were completed as gas wells.

The evidence shows that the plaintiffs' land lies on the east edge of an area from which oil and gas are produced from the Prue Sand; that said sand is thicker and deeper in the center of the area; that wells drilled on the west portion produce oil and casing-head gas and those drilled on the east portion presently produce gas only. The Corporation Commission has for the past several years classified the wells on the Myrtle Townsend Lease as "gas wells".

For the month of December, 1950, and the years 1951 to 1954, inclusive, gas was produced and marketed from the Myrtle Townsend Lease. Oil was only marketed during 14 months of said period. During 1955 no production was marketed from said lease. Gas was marketed by defendants in March and November, 1956; January and November, 1957; and January, 1958.

It appears that prior to 1955, the gas pressure on the wells on the Townsend Lease was such that the gas would not enter Oklahoma Natural Gas Company's line. During said year, a booster was installed for the purpose of increasing the pressure so that the gas from said wells would enter said line.

In 1957 a Mr. X acquired the defendants' interest in production from the SE/4 of the NE/4 of the Townsend tract and also acquired the working interest in 5 other wells in the vicinity of said well. Prior to said time, Mr. X had built an "absorbent gasoline plant" in the vicinity of plaintiffs' properties which plant began to operate in March, 1954. The purpose of the plant was to extract gasoline and light petroleum products from casing-head gas. The par-

ties appear to agree on the proposition that it was a violation of the rules and regulations of the Corporation Commission for Mr. X to process any gas other than casinghead gas at his plant. Irrespective of this fact, Mr. X processed gas produced from the south well on the Townsend tract. As a result of said action, plaintiffs received royalties on gas produced from the south well during the period that Mr. X operated same. There is evidence to the effect that Mr. X also processed (probably a limited amount) of gas produced from other wells in the vicinity of the Townsend Lease.

In 1957 the West Peck Unit was formed to operate the wells in the field which embrace the wells on the Lucy Adams, Myrtle Townsend and other leases. The purpose in forming the Unit was to repressure the field through the use of water and thus produce oil and possibly gas not recoverable through the use of conventional production methods.

In the unitization agreement, which was apparently approved by the Corporation Commission, the wells on the Myrtle Townsend Lease were classified as gas wells and .67% of the total production from the unitized area was allocated to said lease. There was allotted to the Lucy Adams Lease by said agreement 14.48% of the total recovery from the unitized area. The parties agree that a greater portion of total recovery was allocated to oil wells than to gas wells. Using said proposition as a premise, plaintiffs urge that if defendants had complied with their implied covenant to develop the Myrtle Townsend Lease, oil wells would have been developed thereon, which wells would have served to increase the prorata share of the Myrtle Townsend Lease in the production from the unitized area. It is not contended that the unitization agreement is not binding upon the parties hereto, and we assume that plaintiffs only complain of matters which transpired prior to defendants' surrendering operation of the unitized area to the entity chosen to operate same. As indicated, plaintiffs make no complaint relative to operating the south well after Mr. X began to operate same.

The Oklahoma Natural Gas Co. was the sole purchaser of gas produced from the field in controversy. There is competent evidence showing that defendants sold to said company all of the gas which it produced which the company would buy; that said company purchased all gas that it could resell or store; that upon failure of the company to take all allowable gas production, the defendants exercised diligence in attempting to find another market and were unable to do so other than Mr. X offered to buy gas from the Myrtle Townsend Lease after he had built a plant. If Mr. X had purchased the gas, he would have flowed same through his plant, extracted the small volume of gasoline and light petroleum products that same contained and would have sold the residue gas to Oklahoma Natural Gas Co. Defendants agreed to sell to Mr. X subject to the approval of ONG. ONG took the position that gas from the Myrtle Townsend Lease was not casing-head gas and that there was no need for flowing same through Mr. X's plant; that to effect a sale of the gas as residue gas would violate the rules and regulations of the Corporation Commission and, consistent with said position, ONG refused to buy the gas as residue gas. The record shows that following a conference with a representative of ONG, Mr. X ceased to buy gas from one of two wells which are not here involved, because the gas produced from the well was not casing-head gas.

The only evidence that plaintiff introduced which bears upon defendants' alleged breach of the implied covenant to develop the lease by drilling additional wells thereon is the testimony of a geologist. The geologist testified that if a well had been drilled on the SW/4 of the NW/4 of the Townsend tract (this would be a direct offset to wells drilled on the Lucy Adams Lease), the well would have produced oil, and if wells had been drilled on two other possible locations on the Myrtle Townsend Lease same would also have produced oil. As we understand his testimony, all three of the proposed wells would have produced

casing-head gas. This witness testified that he didn't know whether said wells "would be commercial or paying wells".

There was competent evidence sustaining the proposition that if additional wells had been drilled on the Myrtle Townsend Lease same would have been gas wells and that the wells would not have been commercial wells; that under proration orders of the Corporation Commission the wells drilled on said lease would produce all gas that could be lawfully produced and recovered from the lease.

■ Defendants contend that an oil and gas lease will not be cancelled for breach of an implied covenant to drill additional wells unless it is shown that said wells, if drilled, would repay the cost of drilling, equipping and operating, and return a reasonable profit to the lessee. As supporting their contention, defendants cite Wilcox et al. v. Ryndak et al., 174 Okl. 24, 49 P.2d 733; Texas Consolidated Oils et al. v. Vann et al., 208 Okl. 673, 258 P.2d 679, and other cases to the same general effect.

As pointed out, there was competent evidence sustaining the proposition that if additional wells had been drilled same would not have proved commercial wells within the test laid down in the cited cases. We are, therefore, of the opinion that defendants' above referred-to contention is well taken.

While plaintiffs do not appear to seriously challenge the correctness of defendants' contention in the foregoing particular, they earnestly insist that defendants' failure to market production from the Myrtle Townsend Lease requires cancellation of the lease.

■■ The defendants counter plaintiffs' contention with argument to the effect that there is competent evidence showing that they exercised diligence in attempting to secure a market for gas produced from the Townsend Lease; that they marketed the gas when it was possible to market same; that they were not under a duty to market gas in violation of the orders of the Corporation Commission. In support of their

contention that they satisfied the implied covenant of the lease to exercise due diligence in marketing the production therefrom, they cite Strange et al. v. Hicks et al., 78 Okl. 1, 188 P. 347; McVicker et al. v. Horn et al., Okl., 322 P.2d 410, 71 A.L.R. 2d 1211; Eggleson et al. v. McCasland et al., D.C., 98 F.Supp. 693; and Bristol et al. v. Colorado Oil & Gas Corporation, 10 Cir., 225 F.2d 894.

Plaintiffs urge that the rule contended for by defendants is not the correct or applicable rule in this jurisdiction. Plaintiffs say that where production is had under a lease such as is before us "the lessee has a 'reasonable time', considering the attendant facts and circumstances, and if the lessee does not within such time obtain a new market the lessor is entitled to cancellation and the right to pursue other means or engage other parties to find a market". Among the cases cited in support of the quoted contention is State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia, Okl., 336 P.2d 1086; McVicker et al. v. Horn et al., supra; Cotner et al. v. Warren et al., Okl., 330 P.2d 217 and Brown et al. v. Shafer et al., Okl., 325 P.2d 743.

Plaintiffs urge that no substantial production was marketed for a period of 3½ years; that since defendants did not obtain a market during said period, the lease should be cancelled. In making this statement plaintiffs overlook the fact that defendants obtained a market for the gas when the wells first began to produce; that they retained this market during all of the time that they operated the lease; that a booster was installed in order to retain the market; that through the law of supply and demand there was no lawful market for gas in 1955 and only a limited market in 1956 and 1957; that during the last mentioned period, the defendants used due diligence in attempting to market the gas; that production and marketing problems were apparently solved by creating the Unit. The facts of this case serve to distinguish same from the cases cited and relied upon by plaintiffs. Moreover, the cases so cited do not establish that a partial failure to market production for a given period of time (plaintiffs suggest 3½ years) establishes as a matter of law that the lessee has not exercised due diligence in obtaining a market within a reasonable time. To the contrary, State ex rel. Commissioners of Land Office v. Carter Oil Company, supra, which case is cited by plaintiffs, announces a rule to the general effect that the matter of whether a lessee has used due diligence in marketing production depends upon the facts of each case. We are of the opinion that in concluding that defendants, under the facts of this case, used due diligence in marketing production from the Myrtle Townsend Lease and that a market was found within a reasonable time, the trial court did not err. In the last cited case this was said at page 1096 of 336 P.2d:

"The weighing of the evidence in the light of the facts and circumstances of this case clearly discloses that due diligence was exercised in the seeking and obtaining of a market as required by the practical exigencies of the situation obtaining, and that such market was found within a reasonable period of time under such circumstances obtaining. Strange v. Hicks, 78 Okl. 1, 188 P. 347; Bristol v. Colorado Oil & Gas Corp., 10 Cir., 225 F.2d 894; McVicker v. Horn, Robinson and Nathan, supra. See also Gypsy Oil Co. v. Ponder, 92 Okl. 181, 218 P. 663."

■ We next consider the issue relative to damages allegedly resulting from drainage of plaintiffs' land by the wells drilled on the Lucy Adams Lease immediately west and south of a possible location on the SW/4 of the NW/4 of the Townsend tract.

In view of the fact that there is no competent evidence showing that a well drilled on the last above described 10 acres would produce oil and/or gas in paying or commercial quantities, in brief that the well would be a commercial well, and in view of the further fact that it was proved that the well would not be a commercial well, plaintiffs failed to prove the allegations of their petition relative to damages resulting from

alleged drainage. See Wilcox et al. v. Ryndak et al., and Texas Consolidated Oils et al. v. Vann et al., supra.

We are of the opinion that the trial court did not err in entering judgment for the defendants.