Gene I. GARD and Don Allan Gard, Appellants,

v.

Herman George KAISER, Francis Oil and Gas Inc., Fell and Wolfe Oil Company, Jene Eichenberg, Mildred Sanditen, Renee Neuwald, Rose Schlanger, Adolph Neuwald, and Walter Kaiser, all general partners, d/b/a Kaiser-Francis Special Account "B", a general partnership, Appellees.

No. 50186.

Supreme Court of Oklahoma.

July 19, 1978.

As Corrected Aug. 8, 1978.

C. D. Curtis, Curtis & McCune, Fairview, for appellants.

Holliman, Langholz, Runnels & Dorwart, by Frederic Dorwart, J. Michael Medina, Judith K. Pensabene, Tulsa, for appellees.

H. B. Watson, Jr., Gregory L. Mahaffey, Ruchard K. Brooks, of Watson, McKenzie & Moricoli, Oklahoma City, for Supron Energy Corporation, amicus curiae.

BERRY, Justice:

This action was brought by Gene I. Gard and Don Allan Gard, plaintiffs [appellants], lessors herein, to cancel oil and gas leases for failure of lessees, Herman George Kaiser, Francis Oil & Gas Inc., Fell and Wolfe Oil Company, Jene Eichenberg, Mildred Sanditen, Renee Neuwald, Rose Schlanger, Adolph Neuwald, and Walter Kaiser, all General Partners, d/b/a Kaiser-Francis Special Account "B", a General partnership, defendants [appellees] to pay shut-in gas royalty.

The question in this case is the effect of failure to pay shut-in royalty to lessors under shut-in gas provisions of three oil and gas leases. Two of the leases were dated March 25, 1967, with primary term of five years, and the other was dated February 17, 1970, with primary term of six months. These leases covered the same well location, upon which a well was completed and production commenced within the primary terms of all three leases.

Gas from this well was sold from 1970 until 1972, when gas pressure from the well became too low for gas to enter the pipeline for the market of gas.

After the well pressure had declined appellees [having failed to have the pipeline pressure reduced] applied to the Federal Power Commission to permit release from the gas sales contract so they could sell to another company. More than a year later the Federal Power Commission authorized the abandonment of the contract.

After further negotiations a new contract was entered between the lessees and the former purchaser at a much increased price. The new contract required the purchaser to install a compressor to enable gas from the well to enter the pipeline.

Gas was again marketed from this well from April 1975 to date of trial under the new contract.

There had been no shut-in royalty payments made to the lessors by the lessees during the period of time when the well was shut in from 1972 until 1975.

The primary terms of all three leases expired during production and prior to the time the leases were shut in.

Appellants argue only one proposition in their brief, that in the oil and gas leases under the express provisions of the shut-in royalty payments, the leases expired because lessees failed to timely pay the specified amounts.

Two of the oil and gas leases, on Form 88 Prod. Pooling Oklahoma 640 shut-in, contained the following provisions:

"It is agreed that this lease shall remain in force for a term of Five (5) years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

\* \* \* \* \* \*

"2nd. \* \* \* Where gas from a well producing gas only is not sold or used, lessee may pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment \* \* \* made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners \* \* \* If such payment or tender is made it will be considered that gas is being produced within the meaning of the preceding paragraph."

The third oil and gas lease on Form 88 Prod. Pooling Shut In Paid Up, Revised 1963, contained the following provisions:

"It is agreed that this lease shall remain in force for a term of 6 months from March 22, 1970, (herein called primary term) and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee.

\* \* \* \* \* \*

"2nd. \* \* \* During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations \* \* \* lessee shall pay \* \* \* a royalty of One Dollar ($1.00) per year per net royalty acre retained \* \* \* such payment \* \* \* to be made, on or before the anniversary date of this lease \* \* \* from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. \* \* \* When such payment \* \* \* is made it will be considered that gas is being produced within the meaning of the entire lease. \* \* \*"

In deciding this case we must ascertain if the language in the above clauses operates to set a specific termination date.

Lessors contend the clauses "so long as" and "as long as" impose a special limitation on the estate of the lessees and that as soon as production ceases a special limitation occurs and the lease "automatically terminates." They conclude that production will keep the lease alive but in substance say as soon as production ceases and the lease is shut in, the lease expired, citing *Anthis v. Sullivan Oil & Gas Co.*, 83 Okl. 86, 203 P. 187.

Lessors also argue that the instrument is unambiguous and the intent of the parties can be determined from its language and that the lease should be construed against the lessee and in favor of the lessor, citing *Carlisle v. United Producing Co.*, 278 F.2d 893 (10th Cir.); *Lima Oil and Gas Co. v. Pritchard*, 92 Okl. 113, 218 P. 863. Appellants also cite *Greer v. Salmon*, 82 N.M. 245, 479 P.2d 294.

Lessors cite *Flag Oil Corp. v. King Resources*, Okl., 494 P.2d 322, and distinguish it from the case at hand, pointing out in that case the original lease did not contain any provisions for shut-in royalty payments, and that toward the end of the primary term the parties amended the lease for an additional two years with provisions for shut-in royalty payments and that payments were made. Lessors concluded that the case is not in point because it did not involve the existence of a shut-in clause.

Lessees' [appellees] position on appeal is that these oil and gas leases remained in effect despite non-payment of shut-in royalties so long as the lessee diligently sought and found a market for the gas.

In discussing *Greer v. Salmon, supra*, lessees contend that New Mexico cases are contrary to the Oklahoma position in so far as oil and gas lease questions are involved. The Supreme Court of New Mexico has held that the word "produced" includes marketing. Oklahoma, however, has consistently taken the position that "produced" does not include marketing. *McVicker v. Horn*, Okl., 322 P.2d 410.

The Oklahoma rule is set forth clearly in 4 Kuntz, The Law of Oil and Gas § 46.3:

"In a jurisdiction where marketing is not required as a part of the production and a commercial discovery of gas will satisfy the habendum clause, the shut-in gas royalty clause is not required as an additional special limitation to extend the term of the lease. The lease is extended with or without the shut-in gas royalty clause, subject to forfeiture for failure to comply with the implied obligation to market the product."

Lessees contend that even though facts of *Flag Oil Corp., supra*, are not identical that the legal rationale of the case is applicable.

In *Flag Oil Corp., supra*, the primary term expired August 8, 1962. The well had been completed and shut in in November 1959, because of the lack of market. Original lease was amended to provide for shut-in royalty but there was an apparent attempt by lessors to limit the lease extension to not later than August 8, 1964, except under certain other circumstances. Lessees did pay shut-in royalties until August 8, 1964, and tendered further payments which lessors refused to accept. Lessees did continue to search for a market for two and one-half years after payment of shut-in royalties. Our Court cited and relied upon *McVicker v. Horn, supra*, stating that gas in paying quantities had been discovered and that marketing was not required to keep the lease in effect. Therein we expressed the necessity for lessee to continue diligently to seek a market in order to extend the lease beyond its primary terms even though the well was completed and capable of production. We said at p. 416:

"Oil and gas lessees should not be allowed to hold their leases indefinitely, while no product therefrom is being marketed and diligent efforts are not being made to accomplish this, or where, despite their efforts, there is no reasonable probability they will be successful. * * "

Lessees cite Use and Proper Drafting of Shut–In Royalty Clauses by Dr. Merrill, 43 OBJ 2247 (1972) at p. 2252:

"To sum up, the office of a shut-in royalty clause is two-fold. In the first place, it allows the continuance of the lease, without actual production and marketing of the shut-in product by the substitution of the stipulated payment for the royalties which would accrue to the lessor from actual production and marketing. In the second place, it removes a major part of the uncertainties and doubtful applications which arise under the common law doctrine giving the lessee a reasonable time within which to achieve a market for the product. In no way at all does it operate to set a specific date for the termination of the lease. If that is to be achieved, it must be through the addition of very carefully prepared, very explicit language.

"For general discussions of shut-in royalty clauses and their function, see Kuntz Oil and Gas, § 26.13(c) (1964); Williams and Meyers, Manual of Oil and Gas Terms, 232 (1957); Brown, Law of Oil and Gas Leases, § 6.08 (1958)."

Court of Appeals reversed trial court and found that in the present case the well was shut in after the primary term had passed. Actual production had stopped and no shut-in gas payments were made even though diligent effort had been made to market the gas. Therefore, Court of Appeals reasoned facts in the present case are distinguishable from those in *Flag, supra*. Court of Appeals pointed out that in *Flag, supra*, payment of shut-in royalties was to extend the primary term whereas in the present case the primary term had passed and actual production had stopped.

Court of Appeals then reasoned that general rule and majority view is that after the primary term the leases could only be kept alive by production, actual or constructive [payment of shut-in royalties] and neither was done, citing 4 E Kuntz, A Treatise on the Law of Oil and Gas § 46.5, at 31 (1972) and other authorities. Thus the Court of Appeals concluded diligence in finding a market under these facts in the present case would not serve to extend the primary terms of the leases and that *Flag, supra*, would be inapplicable.

Court of Appeals then concluded and held that the leases would not be kept alive for a reasonable time after the well was shut in even if lessees used diligence in seeking a market, and trial court erred in so holding. The error in the premise of the Court of Appeals' conclusion is apparent. Marketing is not a necessary inclusion in the term produced as is found in this action. Under facts herein we hold the provisions of the leases "as long thereafter as * * gas * * * is produced" do not require "marketing." We do not construe language of the leases to operate to terminate a shut-in gas well during a period lessee is diligently seeking a market.

In *McVicker v. Horn, supra*, we held in the first and second paragraphs of the syllabus:

"Where an oil and gas lease does not, in express terms, provide for the marketing of the product of a well drilled on the leased land, any covenant on the part of the lessee to do this can only be an implied one, in which instance said lessee has a reasonable time, after the completion of the well, to comply with such covenant.

"In the present action, instituted by oil and gas lessors and royalty owners, as plaintiffs, against the lessees, as defendants, seeking cancellation of an oil and gas lease on the theory of abandonment and ipso facto termination at the end of the lease's primary term; Evidence examined and Held: The trial court's judgment for defendants was not clearly against the weight of the evidence."

As it is clear in that case, as in the present case, marketing was not necessary to extend the effectiveness of the oil and gas lease. However, we conclude in this event lessee must show a diligent effort was made to market production in order to extend the lease. We further conclude in this case that shut-in gas provisions are not to be construed as limitations or conditions

which would affect termination of the leases. We have carefully examined the record and hold the trial court's finding is not against the clear weight of the evidence.

For reasons hereinbefore set out we conclude the Court of Appeals' holding is a departure from prior decisions of this Court.

Court of Appeals' opinion vacated; trial court affirmed.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BARNES, SIMMS and DOOLIN, JJ., concur.