Miles T. GILLETTE, individually and as Trustee for the Vera F. Jennings Trust, Jack W. Gillette, Vera F. Jennings, Lydia Dunbar, as personal representatives of the Estate of Edward L. Dunbar, Deceased, Lydia Dunbar and Charles A. Underwood, Plaintiffs-Appellees and Cross-Appellants,

v.

PEPPER TANK COMPANY, a corporation, Morton M. Pepper, and Eloyce D. Pepper, Defendants-Appellants and Cross-Appellees.

No. 80CA0232.

Colorado Court of Appeals, Div. II.

Sept. 20, 1984.

As Modified on Denial of Rehearing Oct. 18, 1984.

Samuel L. McClaren, Kreutz & Associates, James K. Kreutz, Denver, for plaintiffs-appellees and cross-appellants.

Ireland, Stapleton & Pryor, P.C., James C. Ruh, Paul S. Sanzo, William J. Leone, Denver, for defendants-appellants and cross-appellees.

PIERCE, Judge.

From a judgment entered after trial to the court in an action for determination of the validity of an oil and gas lease held by defendants, both defendants and plaintiffs appeal. We previously remanded for further findings, and now consider the appeal upon resubmission.

The lease provides for a 4-month primary term and as long thereafter as oil or gas is produced. The principal saving clause, relied on by the trial court, provides:

"It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations."

Also, a unitization agreement, executed in 1963, affects certain portions of the leased lands. The lease in question was first executed in 1951 by Donald P. and Miles T. Gillette, and was assigned, principally, to defendant, Pepper Tank Company (Pepper) in 1959. The lease covers approximately 3,360 acres of land.

Prior to the assignment, a number of successful wells were drilled in 1952–1953, and one well was drilled thereafter in 1957. After the assignment, one well was drilled in 1972; it was plugged and abandoned the same year. There have been no drilling efforts of any nature on the leased property since that time. The major development effort of Pepper was a water-flood operation commenced in 1963 and abandoned in 1971. Presently, all the wells have been abandoned with the exception of Gillette well # 10, which continues to produce at a marginal rate.

Lessors alleged the lease had been terminated during its secondary term because of defendants' failure to produce oil or gas in paying quantities. They further alleged that defendants had breached certain implied covenants of the lease and requested a decree cancelling the lease and quieting title in the lessors.

Upon finding violations of the implied covenants, and in reliance on the judicial ascertainment clause, the trial court grant-

ed conditional cancellation of the lease. The terms of the cancellation were that, if within 60 days Pepper filed with the court a plan of development for the non-producing areas, the cancellation would be ineffective; but if Pepper failed to submit a plan, in order for the cancellation to be effective, lessor, Underwood, was required to file a plan of development. Additionally, the court ruled that if Pepper made all necessary repairs upon the pits, filed an engineer's report indicating completion of such repairs, and thereafter properly maintained such pits, the cancellation would be ineffective as to the producing area.

We affirm that conditional decree except as to part of the acreage involved.

## I.

### A.

Pepper contends that the court's findings as to breaches of the implied covenants to drill, develop, and operate diligently are not supported by the evidence. We disagree.

■ Colorado recognizes, in general, four implied covenants in oil and gas leases: to drill; to develop after discovery of oil and gas in paying quantities; to operate diligently and prudently; and to protect leased premises against drainage. *Mountain States Oil Corp. v. Sandoval*, 109 Colo. 401, 125 P.2d 964 (1942); *see also Graefe & Graefe, Inc. v. Beaver Mesa Exploration Co.*, 635 P.2d 900 (Colo.App. 1981). The basis for these covenants is founded on the concept that in the secondary term of an oil and gas lease:

> "[t]he work of exploration, development, and production should proceed with reasonable diligence for the common benefit of the parties, or the premises be surrendered to the lessor." *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801 (8th Cir. 1905).

Reasonable diligence is, "whatever, in the circumstances, would be reasonably expected of all operators of ordinary prudence, having regard to the interests of both lessor and lessee." *Brewster, supra.*

■ This obligation to explore, develop, and produce, once production is acquired, includes both an implied covenant of reasonable development and an implied covenant of further exploration. *H. Williams & C. Meyers, Oil & Gas Law* §§ 831–847 (1983). The implied covenant of reasonable development requires a determination that additional development will be profitable. This determination rests on proof that, more probably than not, production of oil or gas will be found in paying quantities. The implied covenant of further exploration does not need such proof, but rather requires the lessor to show unreasonability by the lessee in not exploring further under the circumstances.

■ Among the circumstances relevant to determining whether there has been a breach of the promise of further exploration are: the period of time that has lapsed since the last well was drilled; the size of the tract and the number and location of existing wells; favorable geological inferences; the attitude of the lessee toward further testing of the land; and the feasibility of further exploratory drilling as well as the willingness of another operator to drill. *H. Williams & C. Meyers, supra.* The distinction between the two covenants is helpful in our analysis of Pepper's contention of insufficient evidence concerning what a prudent operator in the position of Pepper would have done.

The trial court found one well currently operating, a well drilled and abandoned in 1972, and an abandoned water-flood project. It also found deliberate failure to clear title, and speculative holding by Pepper, while finding some interest by third parties in drilling and developing the lease. Relying on *Mountain States Oil Corp., supra*, the court concluded that Pepper had violated the implied covenants to drill and to develop in a known area.

■ Whether implied covenants are breached is primarily a question of fact. *Mountain States Oil Corp., supra.* Therefore, the findings of the trier of fact must be accepted on review unless they are clearly erroneous. *Page v. Clark*, 197

Colo. 306, 592 P.2d 792 (1979). Here, the findings by the court support its determination of violation of the implied covenant to further explore. *Brewster, supra; Sauder v. Mid-Continent Corp.*, 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934).

■ As to the implied covenant to operate prudently, the trial court found improper maintenance and discharge of water, damage to the surface, and a poorly conducted water-flood operation. Again, a breach of this implied covenant is a question of fact, and therefore, the trial court's finding will not be disturbed on review as the record supports its decision. *Page v. Clark, supra.*

### B.

Pepper also argues that the appropriate remedy, if any, for negligently maintaining the pits, is damages. We disagree.

■ The general rule is that relief in equity may be had only if there is no plain, adequate, and complete remedy at law. This is not an absolute or inflexible rule, and the application of equity is "proper where it is more consonant with the principles of right, justice, [and] morality than [witholding] equitable relief." *Brewster, supra.* This principle is particularly applicable here, where the court's order does not work a forfeiture on Pepper, but rather allows Pepper to retain that portion of the lease conditional on making repairs necessary to prevent discharge of the water.

### C.

Pepper further contends that the court erred in not segregating the unitized land from the non-unitized portion of the lease. We agree in part and disagree in part.

■ Unitization relieves the lessee of the obligation of the implied covenant for reasonable development for each tract *separately.* However, the implied covenants are not abrogated as to the lessee's obligation concerning the unit as a whole. Thus, implied covenants, including the implied covenant to operate the lease in a prudent manner as well as to develop the land rea-

sonably after discovery, are recognized as to the unit. *R. Meyers, The Law of Pooling & Unitization* §§ 14.02(7) and 14.03(2) (1967); *Buchanan v. Sinclair Oil & Gas Co.*, 218 F.2d 436 (5th Cir.1955); *Phillips Petroleum Co. v. Peterson*, 218 F.2d 926 (10th Cir.1954).

Evidence supports the trial court's finding that Pepper violated the implied covenant to operate prudently by allowing improper maintenance and discharge of water. We therefore affirm the trial court's ruling as to the SW ¼ of the SE ¼ of Sec. 9.

■ Whether Pepper has breached the implied covenants of reasonable development and further drilling on the unitized portion of the lease must be considered in view of the entire unit, because, according to the terms of the unit agreement, production on any portion of the unitized area extends the lease as to the unitized portion of the lease. *See also W. Summers, Oil & Gas* § 952 (1957 & Cum.Supp.1984). Thus, if Pepper complies with the trial court's order concerning repairs in the SW ¼ of the SE ¼ of Sec. 9, the trial court may find the production from Gillette well # 10, even though marginal, sufficient to hold the entire unit and show no breach of the implied covenants as to the unitized area. *See Superior Oil Co. v. Devon Corp.*, 458 F.Supp. 1063 (D.Neb.1978), *rev'd on other grounds*, 604 F.2d 1063 (8th Cir.1979).

The trial court did not consider the entire unit; we therefore reverse as to the remaining portions of the lease affected by the unitization agreement, namely: S ½ of Sec. 4, the E ½ of the SE ¼ of Sec. 9, and the NW ¼ of the SE ¼ of Sec. 9.

## II.

### A.

Lessors argue that conditional cancellation is not appropriate, but rather the court should have granted an absolute cancellation. We disagree.

■ Breach of the implied covenants generally leaves no adequate remedy of

law. *Brewster v. Lanyon, supra.* Thus, the district court may decree cancellation in whole or in part. *Sauder v. Midcontinent Oil Corp., supra; Graefe & Graefe, Inc. supra.*

The district court may also rely on a judicial ascertainment clause as found in the present lease in decreeing a conditional cancellation. Lessors argue that such clause is void, relying on *Frick-Reid Supply Corp. v. Meers,* 52 S.W.2d 115, 118 (Tex.Civ.App.1932). This case has not been followed in Colorado. Although in *Graefe & Graefe, Inc., supra* and in *Dulin v. West,* 35 Colo.App. 6, 528 P.2d 411 (1974) this court enforced absolute decrees of cancellation, there was no reference in either case to a judicial ascertainment clause. *See Mountain States Oil Corp., supra.*

### B.

Lessors also argue that there is no need for requiring lessor Underwood to submit a plan of development. Again, we disagree.

The trial court properly relied upon *Humble Oil & Refining Co. v. Romero,* 194 F.2d 383 (5th Cir.1952) in fashioning equitable relief, under the present circumstances, including the requirement that Underwood file a plan of development with the court.

Plaintiffs' other claims of error are without merit or were not raised in their motion for new trial. C.R.C.P. 59(f). Lessors' contentions of error concerning the trial court's decision based on res judicata and the trial court's granting of stays are also without merit.

The judgment is reversed as to the following portions of the lease affected by the unitization agreement: the S ½ of Sec. 4, the E ½ of the SE ¼ of Sec. 9, and the NW ¼ of the SE ¼ of Sec. 9. The trial court is to reconsider its findings regarding this portion of the lease in accordance with the views expressed in this opinion. The conditional decree as to the remainder of the lease is affirmed.

BERMAN and STERNBERG, JJ., concur.